# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 12-cr-162 |
| | ) | |
| KASHMA JORDAN, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## OMNIBUS PRETRIAL MOTIONS ORDER

Presently before the Court for disposition in this large cocaine conspiracy case are numerous pre-trial motions which have been filed by the remaining Defendants.[1] (ECF Nos. 257-261, 263, 265, 266, 269-272, 274, 275, 279, 281, 283, 286, 288, 290-293, 311-314, 317-321, 323-337, 341-345, 350, 505-516, 518, 604-620). The government, with the Court's permission, has filed omnibus responses to the motions (ECF Nos. 349, 356, 622), and has submitted an appendix filed under seal. The Court notes that many of the motions preceded the filing of the Superseding Indictment (ECF No. 369). Nevertheless, because the Superseding Indictment re-asserts many of the charges in the original Indictment, the Court will resolve all motions. No Defendant has filed a reply. The motions are now fully briefed and ripe for disposition.

Factual and Procedural Background

The charges in this case stem from a lengthy investigation of cocaine and heroine trafficking in Washington, Pennsylvania. The investigation included consensual phone intercepts,

---

[1]All outstanding discovery motions filed by Defendants who have pled guilty (Will Levy, Juan Worthey, Christina Wright, Keith Malone, Michael Sutton, Zachary King, Brent Anderson) are **DENIED AS MOOT**.

controlled purchases of drugs, Court-ordered Title III wiretap intercepts of cellular telephones, and confidential informants. On June 13, 2012, the grand jury returned an 18-count Indictment in this criminal action, Criminal No. 12-162, which named seventeen persons as Defendants (Kashma Jordan, Robert Harvey, Juan Worthey, Jr., Mario Rodgers, Brandon Wise, Allan Williams, Will Levy, Keith Malone, Alex Hockett, Brent Anderson, Eric Everett, Brandon Boone, Josh Williams, Christina Wright, Terrell Percy Williams, Michael Porter and Derrick Knox). Count 1 charged all Defendants with conspiracy to possess with intent to distribute and distribute five kilograms or more of cocaine from January 2011 through June 2012. Counts 2-18 charged various Defendants with possession with intent to distribute cocaine or crack on various dates.

On March 19, 2013, the grand jury returned a 22-count Superseding Indictment. All of the original Defendants (with the exception of Worthey, Malone and Wright) were named in the Superseding Indictment. In addition, John Wright, Jr., Zachary King and Michael Sutton were newly named as Defendants in the Superseding Indictment. Count 1 again alleges a cocaine conspiracy against all Defendants, and Counts 2-15 re-allege the cocaine possession/distribution charges from the original Indictment. Counts 16-18 of the Superseding Indictment allege cocaine possession/distribution charges against newly-named Defendants Sutton and King. Counts 19 and 22 of the Superseding Indictment charge Jordan and Everett with possession of a firearm in furtherance of a drug trafficking crime. Counts 20-21 of the Superseding Indictment charge Porter and Everett with possession of a firearm/ammunition by a convicted felon.

<u>Legal Background</u>

The principles of law governing an alleged drug conspiracy can be difficult to grasp. The Third Circuit Model Jury Instructions regarding the crime of "Conspiracy" illustrate the vast scope of the liability to which even a minor or tangential member may be exposed. "Conspiracy" is a criminal offense separate and apart from the underlying drug possession/distribution offenses that were the alleged objectives of the conspiracies in this case. It is a federal crime for two or more persons to agree or conspire to commit any offense against the United States, even if they never actually achieve their objective.

A conspiracy is a type of criminal partnership. In order to establish the crime of conspiracy to distribute and possess with intent to distribute a controlled substance, the jury in this case will be instructed that the government must prove each of the following elements beyond a reasonable doubt:

1.   That two or more persons agreed to distribute and possess with the intent to distribute a controlled substance;

2.   That Defendant was a party to, or member of, that agreement;  and

3.   That Defendant joined the agreement or conspiracy knowing of its objective to distribute and possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that Defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve those objectives.

The government must prove beyond a reasonable doubt that two or more persons knowingly and intentionally arrived at a mutual understanding or agreement, either spoken or unspoken, to work together to achieve the overall objective of the conspiracy. The government does <u>not</u> have to prove the existence of a formal or written agreement, or an express oral agreement spelling out the details of the understanding. The government also does <u>not</u> have to

3

prove that all the members of the conspiracy directly met, or discussed among themselves their unlawful objective, or agreed to all the details, or agreed to what the means were by which the objective would be accomplished. The government is <u>not</u> required to prove that all members of the alleged conspiracy were named, or that all members of the conspiracy are even known to one another. What the government must prove beyond a reasonable doubt is that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective.

The government must prove that each Defendant knew the goals or objectives of the agreement or conspiracy and voluntarily joined it during its existence, intending to achieve the common goals or objectives and to work together with the other alleged conspirators toward those goals or objectives. However, the government does <u>not</u> have to prove that a Defendant knew everything about the conspiracy or that he/she knew everyone involved in it, or that he/she was a member from the beginning. The government also does <u>not</u> have to prove that he/she played a major or substantial role in the conspiracy. On the other hand, evidence which shows that Defendant only knew about the conspiracy, or only kept "bad company" by associating with members of the conspiracy, or was only present when it was discussed or when a crime was committed, is not sufficient to prove that he/she was a member of the conspiracy even if he/she approved of what was happening or did not object to it.

The acts or statements of <u>any</u> member of a conspiracy are treated as the acts or statements of <u>all</u> the members of the conspiracy, if these acts or statements were performed or spoken during the existence of the conspiracy and to further the objectives of the conspiracy. Therefore, the jury may consider as evidence against a Defendant any acts done or statements made by <u>any</u> members of the conspiracy, during the existence of and to further the objectives of

the conspiracy. The jury may consider these acts and statements even if they were done and made in a Defendant's absence and without his/her knowledge.

There are different statutory maximum penalties for offenses involving different quantities of cocaine: (20 years if the quantity is less than 500 grams; 40 years if the quantity is more than 500 grams but less than 5 kilograms; and life imprisonment if the quantity is more than 5 kilograms).[2] Therefore, the government must prove the amount of cocaine involved in the alleged conspiracy beyond a reasonable doubt. However, it is the amount of cocaine involved in the entire conspiracy charged – not the amount attributable directly to any individual Defendant – that must be so proven. *United States v. Phillips*, 349 F.3d 138, 143 (3d Cir. 2003). Once the jury makes a finding as to the drug quantity attributable to the conspiracy as a whole, the sentencing judge determines, by a preponderance of the evidence, the drug quantity attributable individually to each convicted Defendant. *Id.* If a Defendant is convicted of conspiracy, he/she is liable for the quantity handled by the entire conspiracy, not just the quantity of drugs he/she handled individually. *United States v. Barndt*, 2013 WL 3929041 at *3 (3d Cir. July 31, 2013) (non-precedential). *See generally United States v. Claxton*, 685 F.3d 300 (3d Cir. 2012) (discussing whether evidence was sufficient to prove drug conspiracy).

Legal Analysis

With that background, the Court turns now to the pending motions. The Court has elected to follow the "grouping" methodology used by the government in its Omnibus Responses as the most efficient and easiest to follow, for the convenience of all concerned. However, the

_____

[2]Different statutory mandatory minimum penalties also apply.

government's grouping methodology was not always consistent and the Court will address the motions in a different sequence than that employed by the government. The Court further notes that many of the motions filed by Defendants address multiple categories of information, and are addressed in multiple groups.

> 1.    Motions for Joinder (# 314, 343, 344, 515, 516, 518, 611, 617)

Numerous Defendants have filed motions to join in pretrial motions filed by other Defendants. On January 28, 2013, the Court issued an Order which denied motions for joinder filed by Defendants Malone and Boone, and explained that blanket-type joinder motions create confusion and administrative difficulty. Accordingly, the Court required any Defendant who aspires to join a motion filed by a co-Defendant to file a "separate statement of joinder" which establishes standing and a factual/legal basis for joint application before a joinder motion would be granted. On January 29, 2013, the Court granted motions for joinder filed by Defendant Porter (ECF # 308, 309), which satisfied such standard.

The motions for joinder filed at ECF # 314 and 344 recite the specific motions that Defendants Rodgers and Wise seek to join. However, the proffered justifications are blanket-type and merely conclusory. Accordingly, the motions for joinder at ECF ##314 and 344 are **DENIED**.[3] The remaining motions for joinder (ECF ## 343, 515, 516, 518, 611, 617) are **GRANTED**.

---

[3]As a practical matter, the Court's rulings on the underlying motions will also apply to these Defendants.

2.     <u>Motions to Suppress Wiretap Evidence (## 288, 309, 330, 514, 611, 617)</u>

There were four Court-ordered Title III wiretap intercepts in this case, involving a total of five target telephones.  Defendants Williams and Jordan seek to suppress all of the evidence obtained by the government through use of the Court-ordered wiretap intercepts at Miscellaneous Nos. 11-376, 376(a), (b) and (c).  Defendant Porter challenges only the wiretaps at Miscellaneous Nos. 11-376(b) and (c).[4]

The government's initial Application for a wiretap was presented to Judge Joy Flowers Conti of this Court on December 16, 2011.  The government sought to intercept communications of Demetrious Levy, Will Levy, Terrell Percy Williams, Shannon Levy, Brandon Wise, Romone Barnes, and others, on a cellular telephone subscribed to by John Dingle and used by Demetrius Levy (Target Phone #1) for a period of thirty (30) days.  The Application was supported by a 48-page Affidavit prepared by FBI Special Agent Michael Craig Evans.  Judge Conti granted the Application on December 16, 2011 at Misc. No. 11-376.

The Court[5] issued three additional Orders on January 18, 2012, February 17, 2012 and March 22, 2012 (Misc. Nos. 11-376 (a)-(c), respectively) to authorize extensions/expansions of the wiretaps based on followup Applications/Affidavits.  By these Orders, the government was authorized to intercept communications with a cellular telephone subscribed to by Danyelle Levy and used by Will Levy (Target Phone #2), a Sprint cellular telephone with no subscriber information used by Terrell Williams (Target Phone #3), a T-Mobile cellular telephone with no

---

[4]The government contends that Jordan and Porter were intercepted only on Terrell Williams' phone, and Rodgers was intercepted only on Juan Worthey's phone, and therefore, they lack standing to challenge the intercepts on the phone of Demetrius Levy.

[5]The February 17, 2012 Order at Misc. #11-376(b) was issued by Judge Arthur J. Schwab.

subscriber information also used by Terrell Williams (Target Phone #4), and a cellular telephone subscribed to "IVR 1532473" and used by Juan Worthey (Target Phone #5). The Applications, Affidavits and Court Orders have been provided to Defendants.

Defendants contend that the wiretaps were obtained in violation of 18 U.S.C. § 2518 and were issued without probable cause, in violation of the Fourth Amendment. In particular, Defendants argue that the Affidavits failed to satisfy the "necessity" requirement because they did not establish a sufficient factual predicate as to why other traditional, less-intrusive law enforcement techniques were not sufficient. Defendants contend that traditional techniques, such as pen registers, surveillance, controlled purchases of drugs by confidential informants and surveillance had proven effective in this very investigation (as recognized in the Affidavits of Special Agent Evans), while other methods, such as trash pulls, search warrants, grand jury subpoenas and offers of leniency in exchange for cooperation, were not tried. Defendants point out that Demetrius Levy was told that the confidential source was working with law enforcement, but continued to deal with that informant anyway. They surmise that even though the government had a strong case against Demetrius Levy, they used him as an excuse or shortcut to get a wiretap to go on a "fishing trip" to find other drug dealers. Defendants also contend that the "necessity" element was not independently satisfied for each of the successive wiretaps. In addition, Defendants contend that the Applications did not establish probable cause because they contained stale information, relied heavily on the affiant's past experience and contained only vague and conclusory allegations as to the events of this case. The government contends that its Applications and the underlying Affidavits properly complied with the

requirements of the wiretap statute and circuit precedent. *See United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997).

As an initial matter, the Court concludes that it need not conduct an evidentiary hearing on the motions to suppress wiretap evidence. The motions challenge the sufficiency of the information contained within the four corners of the Applications and Affidavits and have been thoroughly briefed. The Court turns now to the substance of the parties' respective arguments.

The federal wiretap law, 18 U.S.C. § 2518(1)(c), requires that the affidavit in support of a wiretap application contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." The Court must then determine, on the basis of the application, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § (3)(c). *Williams* outlines a practical and commonsense review, in which the court may consider affirmations founded in part on the experiences of trained agents. 124 F.3d at 418. In each Order, the Judge expressly concluded that the probable cause and necessity elements were met. The issuing Judge found that the government had adequately demonstrated that normal investigative procedures had been tried with limited success, appeared unlikely to succeed further or were too dangerous to attempt.

When a warrant is later challenged, a deferential standard of review is applied in determining whether the issuing judge had a "substantial basis" for issuing the warrant. *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993); *Illinois v. Gates*, 462 U.S. 213, 237 (1983). Upon review of the Affidavits of Special Agent Evans, this Court concludes that they contain

sufficient averments regarding the effectiveness and limitations of traditional techniques during this investigation. For example, Special Agent Evans explained that traditional techniques had provided considerable intelligence of a wide-spread, ongoing narcotics operation, but had been unsuccessful in discovering the full scope of the operation and the identities of all individuals involved. The Affidavits discuss, in reasonable detail, the pros and cons of alternative investigative techniques, including telephone toll/pen register, search warrants, physical surveillance, trash pulls, informants and undercover agents (including that Demetrius Levy had been told that CS-2 was working with law enforcement), and grand jury subpoenas. Each of the subsequent Affidavits contained a similarly comprehensive discussion of alternative investigative techniques and the need for continued interception and/or initiation of intercepts on additional phones. In sum, the Court has no difficulty in concluding that the wiretap Applications, Affidavits and Court Orders complied with the statutory requirements. Defendants' motions to suppress the wiretap evidence (ECF Nos. 288, 309, 330, 514, 611, 617) are **DENIED**.

<u>3.</u>      <u>Motions for Severance of Defendants (#257, 313)</u>

Defendants Boone and Rodgers contend, somewhat conclusorily, that their trials should be severed from those of the co-Defendants pursuant to Fed. R. Crim. P. 8 and 14. Defendants speculate that they may be prejudiced by the evidence adduced against more-culpable co-Defendants because the jury will be unable to separate the evidence against each Defendant, and that they may be deprived of the opportunity to confront the statements of co-Defendants. Boone concedes that it is impossible to determine the prejudicial effect of a joint trial at this time, and asks the Court to "monitor for prejudice."

Defendants have not met their heavy burden to demonstrate prejudice or to overcome the general interest in judicial economy for joint trials of Defendants who are indicted together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). The jury will be properly instructed to consider the guilt or innocence of each Defendant separately.

Accordingly, the severance motions (ECF ## 257, 313) are **DENIED**.

4.     <u>Motion to Dismiss Indictment (#311)</u>

Rodgers seeks to dismiss the Indictment because he was not recorded on the wiretaps and was not found in possession of illegal drugs. He contends, correctly, that a mere buyer-seller relationship is not sufficient to prove conspiracy. The government, in response, contends that this is a premature challenge to the sufficiency of its evidence. The Court agrees with the government. The Indictment is sufficient to charge Rodgers with conspiracy, and Rodgers must reserve his challenge to the government's case until trial.

Accordingly, Defendant's motion to dismiss indictment (ECF #311) is **DENIED** without prejudice.

5.     <u>Motions for Bill of Particulars (#269, 291, 318, 326, 348, 604, 613)</u>

Defendants seek more particular information regarding the alleged times, dates, places and actions of the conspiracy, and the specific roles and actions of each Defendant. On January 7, 2013, the Court denied a motion for a bill of particulars filed by Jordan.

Federal Rule of Criminal Procedure 7(f) provides as follows:

The Court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits.  The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f).

A district court has broad discretion in granting or denying a criminal defendant's motion for a bill of particulars. *United States v. Rosa,* 891 F.2d 1063, 1066 (3d Cir. 1989).  The purpose of a bill of particulars is to inform the defendant of the nature of the charge(s) brought against him or her so that the defendant is able to adequately prepare a defense.  *United States v. Addonizio,* 451 F.2d 49, 63 (3d Cir.), *cert. denied*, 40 U.S. 936 (1972).  The Court of Appeals for the Third Circuit has instructed that a district court should grant a motion seeking a bill of particulars when an indictment's failure to provide factual or legal information "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *Rosa*, 891 F.2d at 1066.  However, a defendant is not entitled to general discovery of the government's case, evidence or witnesses. *United States v. Armocida,* 515 F.2d 49, 52 (3d Cir.), *cert. denied,* 423 U.S. 858 (1975).

A bill of particulars need reveal "only the minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985).  In ruling on a request for a bill of particulars, the Court should consider all information that has been disclosed to the defendant in the course of the prosecution, whether or not included in the indictment. *United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir.), *cert. denied,* 490 U.S. 914 (1972).  In this case, Defendants have been provided with the extensive Affidavits in support of the wiretap applications and the government represents that it has made

other ongoing disclosures of evidence.  Indeed, the gravamen of Porter's motion is that the government's disclosures have been too voluminous.

In exercising its discretion in this case, the Court concludes that a bill of particulars is not warranted.  The government has provided substantial pretrial disclosures, the Superseding Indictment adequately apprises Defendants of the pending charges, and the alleged drug conspiracy is straight-forward and of relatively short duration.  Although there are numerous alleged co-conspirators, it is not incumbent upon the government to prove the role(s) played by each Defendant.  *United States v. Boffa*, 513 F. Supp. 444, 485 (D. Del. 1980) (citations omitted).  Accordingly, the motions for a bill of particulars are **DENIED**.


6.      Motion for Pretrial *James* Hearing (## 312, 612)

Defendants Rodgers (joined by Wise) and Harvey seek a pretrial hearing to determine the admissibility of statements of alleged co-conspirators pursuant to Fed. R. Evid. 801(d)(2)(E).  *See United States v. James*, 590 F.2d 575 (5th Cir. 1979); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  Harvey recognizes that a *James* hearing is not required in every case, but is within the discretion of the Court.  The government contends that such a hearing would be protracted, duplicative of the trial on the merits, is unnecessary, and is a backdoor attempt to obtain premature disclosure of its witnesses.  The government argues that the admissibility of co-conspirator statements should be decided at trial.

The Court agrees with the government that a pretrial hearing is not warranted under the facts and circumstances of this case.  There is substantial evidence of the existence of a drug conspiracy, as reflected by the guilty pleas of a significant number of the Defendants charged in

this case.  Moreover, in *Government of Virgin Islands v. Brathwaite*, 782 F.2d 399, 403 & n.1 (3d Cir. 1986), the Court explained that "the prosecution must lay a foundation for the admission of co-conspirator testimony by establishing the existence of a conspiracy that included the defendant or defendants," but noted that there is a distinction between the crime of conspiracy and the "coconspirator exception to the hearsay rule set forth in Federal Rule of Evidence 801(d)(2)(E)." In *United States v. Giampa*, 904 F. Supp. 235, 286 (D.N.J. 1995), the Court explained:  "a practical evidentiary rule has developed whereby a co-conspirator's statement is conditionally admitted into evidence, subject to the Government's obligation to prove the conspiracy's existence and each conspirator's participation therein before the close of the Government's case."  "In the event the Government fails sufficiently to connect the defendant to the conspiracy, the "connection up" rule of admitting co-conspirator statements can lead to a mistrial." *Id.*  This procedure appears to be eminently practical in this case, and it will be the government's burden to "connect up" each Defendant at trial.  Accordingly, the motions for a pretrial *James* hearing regarding the admissibility of co-conspirator statements are **DENIED**.

7.     Motions for *Starks* Hearing (## 261, 308)

Defendants ask the Court to hold an "audibility hearing" in advance of trial to determine the quality of the recordings that the government may seek to introduce into evidence. Defendants contend that large portions of the tapes may be inaudible, misleading, unfairly prejudicial and/or contain inadmissible hearsay.  In response, the government agrees that the Court may need to review certain tape recordings which the government actually seeks to admit into evidence, but suggests that having the Court listen to all of the tapes would be a time-

consuming and inefficient exercise. The government further represents that it will provide transcripts to aid the jurors while listening to the tapes, as contemplated in *United States v. DiSalvo*, 34 F.3d 1204, 1220 (3d Cir. 1994). The government requests that Defendants identify the particular recordings they wish to challenge.

Pursuant to *United States v. Starks*, 515 F.2d 112, 121 & n. 11 (3d Cir. 1975), if the Defendant makes a colorable attack as to authenticity or accuracy, the United States must provide clear and convincing evidence of authenticity and accuracy of the recordings and lay a proper foundation for admissibility. Moreover, it is the United States – not the Defendants – who is in the best position to determine which tapes it intends to play for the jury. Therefore, the burden is on the United States to identify the tapes it seeks to place into evidence, and to lay a proper foundation for their admission, in a timeframe that will not delay the trial.

Accordingly, no later than thirty-one (31) days before trial, the government shall provide notice to Defendants all of the tape recordings it intends to use at trial, accompanied by the transcripts of each recording which the government intends to give to the jurors. Within ten (10) days after receipt of such notice from the government, Defendants may renew their motions for a *Starks* hearing, if warranted. If necessary, the Court will promptly schedule a hearing and endeavor to resolve the matter in advance of trial.

In accordance with the foregoing, the motions for a *Starks* hearing are **GRANTED IN PART** such that the government must provide notice to Defendants of the tape recordings it seeks to place into evidence no later than 31 days before trial; and **DENIED WITHOUT PREJUDICE** in all other respects.

8.      General Discovery Motions

Discovery in a criminal case is far different from that in a civil case. The government's obligation to make available pretrial discovery materials is governed primarily by Rule 16 of the Federal Rules of Criminal Procedure. Outside of Rule 16, the Jencks Act, and *Brady* and its progeny, however, a defendant has no general constitutional right to pretrial discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Those rights conferred by rule, statute, and case law cannot be used to compel the United States to disclose the minutia of its evidence, trial strategy, or investigation. *United States v. Fiorvanti,* 412 F.2d 407, 411 (3d Cir.), *cert. denied,* 396 U.S. 837 (1969). The Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas listed in Federal Rule of Criminal Procedure 16(a)(1), "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos,* 27 F.3d 65, 68 (3d Cir. 1994). Generally, these other areas are limited to the Jencks Act and materials available pursuant to the *Brady* doctrine. *Id.* The Court appreciates, and in some circumstances shares, Defendants' frustration with these discovery limitations.

At the outset, the Court notes that the government has repeatedly acknowledged its obligations under *Brady* and its progeny, *Giglio*, Federal Rules of Criminal Procedure 12 and 16, and the Jencks Act. The government has also made the following representations: (1) that it is willing to cooperate with any reasonable request by Defendants; (2) that it is unaware of any exculpatory *Brady* material pertaining to Defendants; (3) that it will voluntarily turn over Jencks Act materials in its possession at least 14 days prior to trial; (4) that it will turn over any impeachment materials at least 14 days prior to trial so that defense counsel can effectively cross-

16

examine government witnesses;(5) that it will provide a written summary of any expert testimony at least 14 days prior to trial; (6) that it will provide any *Brady* impeachment material as to each trial witness at least 14 days prior to trial; (7) that it will preserve the rough notes taken by agents; and (8) that at least 14 days prior to trial it will inform Defendants of the general nature of any specific bad act evidence it will seek to introduce at trial pursuant to Fed. R. Crim. P. 404(b) and has already provided copies of their respective criminal records. The Court is confident that the government is well aware of its continuing duty to provide material to Defendants, and that it will faithfully discharge its duty without "tacking too close to the wind." *Kyles v. Whitley,* 514 U.S. 419, 439 (1995).

The government also represents that it has already disclosed substantial amounts of evidence in this case to Defendants, including written and recorded statements of Defendants, copies of all of the wiretap intercepts, copies of the Applications, Affidavits and Court Orders pertaining to the wiretap intercepts, Defendant-specific charts outlining pertinent calls (when requested), copies of agent reports and lab reports. Similarly, the government notes that its physical evidence has been available for review and it has invited defense counsel to meet with and question the government agents regarding their clients' alleged roles in the conspiracy.

The Court turns now to the various categories of information sought by one or more of the remaining Defendants.

a.      Rule 404(b) Evidence (#274, 283, 292, 294, 329, 338, 345, 350, 609, 615)

Defendants have requested the disclosure of evidence of other crimes, wrongs or acts that the government intends to introduce at trial, pursuant to Fed. R. Evid. 404(b) and 609.

17

The government has stated that it has not yet identified the specific "bad act" evidence it will seek to introduce at trial, and notes that it has already provided Defendants with copies of their criminal records. In addition, the government has represented that it is aware of its obligation and will provide such evidence at least fourteen (14) days prior to trial. Accordingly, Defendants motions are **GRANTED AS UNOPPOSED**, in accordance with the government's representation.

To the extent that Defendants seek to exclude Rule 404(b) evidence, those motions are premature and must await the further development of the record at trial. Accordingly, such motions are **DENIED WITHOUT PREJUDICE**. A pretrial hearing is not warranted on this issue.

b. Experts and General Discovery Obligations (#259, 275, 279, 293, 321, 324, 328, 332, 333, 605-610, 614-616, 618-620)

The government anticipates that it will use expert testimony regarding testing of the drugs, fingerprints, and the interstate nexus of the firearms. The government hopes to reach a stipulation with Defendants, such that no expert testimony is necessary. The Court strongly encourages all sides to pursue such a stipulation.

As to general discovery, as noted above the government has acknowledged all of its legal obligations and has represented that it will comply with them. In addition, as recited above, the government has made numerous representations regarding its willingness to provide information in advance of the deadlines mandated by statute and/or rule. Defendants have not alleged a legal violation by the government. Accordingly, Defendants' motions are **DENIED**.

c.      *Brady* Exculpatory Material (# 260, 270, 279, 323, 327, 335, 336, 605, 618 )

Defendants request all material and information that may be favorable to them on the issues of guilt and/or punishment.  Defendants correctly point out that this information must be viewed cumulatively.   As noted *supra*, the government has represented that it is not aware of any exculpatory or *Brady* material pertaining to any Defendant.  Accordingly, these motions of Defendants are **DENIED WITHOUT PREJUDICE**.

d..      Witness Impeachment Evidence (#605, 618)

As part of their *Brady* motions, Defendants Harvey and Everett seek early disclosure of impeachment material pertaining to the government's anticipated trial witnesses and/or non-witness declarants whose statements are to be offered into evidence.  The government objects to any expansion of its discovery obligations beyond its legal requirements.  As the government correctly notes, to require disclosure at this time of the requested information is tantamount to having the government identify its witnesses.  The government is not obliged to provide a witness list in a non-capital case except in conformity with the Jencks Act, 18 U.S.C. § 3500, which requires the government to provide the defense with statements of witnesses that the government intends to call <u>at trial</u>.  The government recognizes that evidence which would tend to impeach the testimony and/or the credibility of a witness must be  turned over so that defense counsel is able to effectively cross-examine that witness.  Moreover, the government  recognizes

that strict compliance with the Jencks and *Brady* time limits could result in delay and has represented that impeachment materials relating to its trial witnesses will be provided at least 14 days prior to trial.

The government is reminded of the mandate from our appellate court that "prosecutors have an obligation to make a thorough inquiry of all enforcement agencies that ha[ve] a potential connection with the[ir] witnesses." *United States v. Risha*, 445 F.3d 298, 304 (3d Cir. 2006) (*citing United States v. Thornton*, 1 F.3d 149, 158 (3d Cir. 1993)). *See also United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir. 2008). Accordingly, Defendants' motions are **DENIED**.

e.     Disclosure of Jencks Act Materials and Witness List (#258, 265, 266, 271, 272, 273, 279, 286, 290, 317, 319, 331, 334, 342, 607, 619, 620)

Defendants seek early disclosure of Jencks Act materials. The government has agreed to provide Jencks materials at least 14 days prior to trial and has no duty to do so sooner. Nor is the government required to provide its witness list in advance of trial. *United States v. Casseus*, 282 F.3d 253, 257 (3d Cir. 2002). Accordingly, these motions of Defendants are **DENIED**.

f.     Law Enforcement Notes (#263,281, 325, 610)

Defendants have sought preservation of the "rough notes" taken by law enforcement agents. The government acknowledges its obligation to preserve such rough notes. *United States v. Ramos*, 27 F.3d 65, 68-69 (3d Cir. 1994).

To the extent that Defendants have also sought disclosure of the rough notes, the government objects to disclosure. The rough notes of law enforcement agents generally are not discoverable unless those notes, pursuant to Fed.R.Crim.P. 16(a)(1)(A), constitute the substance of oral statements of a defendant which the government intends to offer into evidence at trial, which statement was given in response to interrogation by a person then known by the defendant to be a government agent. *See United States v. Fischbach and Moore, Inc.*, 576 F. Supp. 1384, 1390 (W.D. Pa. 1983).

In accordance with the foregoing, the motions are **GRANTED IN PART** as to the preservation of notes and **DENIED IN PART WITHOUT PREJUDICE** as to disclosure of such notes to Defendants.

g.      Miscellaneous Discovery

Defendants seek numerous categories of discovery, including information about the investigation, statements, documents and objects to be used as evidence against each individual Defendant, expert reports, and scientific evidence. The government objects to any efforts to expand its discovery and/or disclosure duties. The government acknowledges its responsibilities under the Jencks Act, *Brady*, *Giglio*, and Rules 12 and 16 of the Federal Rules of Criminal Procedure and represents that it has or will fully comply with those obligations. Accordingly, to the extent not directly addressed above, Defendants' discovery motions will be **DENIED WITHOUT PREJUDICE** to reassert in the context of a specific alleged breach by the government. Defendants are entitled to challenge newly-produced information, but will not be permitted to raise tardy challenges to information that was disclosed by the government prior to the pretrial motions deadline. The Court notes that Defendants will also have the opportunity to assert appropriately targeted  motions in limine.

9.      Miscellaneous Motions (#337, 339, 341)

Defendant Jordan has filed three motions that do not fit neatly into any of the above categories.  In ECF #337, he seeks to preclude reference at trial to the phrase "come on with it," presumably pursuant to Fed. R. Evid. 403(b).  The Court interprets this motion as a premature motion in limine and it is **DENIED WITHOUT PREJUDICE**.

In ECF #339, he appears to "notice the Court" of his intent to disregard the Court-ordered deadlines for filing motions.  This motion is **DENIED** and counsel is instructed to strictly comply with the Orders of this Court or risk a finding of contempt of court.  As explained above, Defendants are entitled to challenge newly-produced information, but will not be permitted to raise tardy challenges to information that was disclosed by the government prior to the pretrial motions deadline.

In ECF #341, Jordan requests that the Court provide a written explanation for its rulings.  The motion is **GRANTED**, as this Omnibus Pretrial Motions Order provides such explanation.

10.     <u>Government's Cross-Motion (#356, 622)</u>

The government has made a request for reciprocal discovery subject to disclosure pursuant to Federal Rule of Criminal Procedure 16(b)(1).  **The Court ORDERS Defendants to provide the government with the requested reciprocal discovery at least fourteen (14) days prior to trial.**

So **ORDERED** this 7th day of October, 2013.

BY THE COURT:

<u>s/Terrence F. McVerry</u>
United States District Court Judge

cc:       All counsel of record